## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

———————————————————————————
Pension Benefit Guaranty Corporation          )
    on its own behalf and on behalf of          )
    the Retirement Program of Liam Ventures, Inc.,          )
                                        )
                Plaintiff,          )
                                        )          Civil Action No.:
                v.          )          08CV2529
                                        )
William F. Farley, *et. al.*          )
                                        )
                   Defendants.          )
———————————————————————————

## PENSION BENEFIT GUARANTY CORPORATION'S
## MOTION TO REASSIGN RELATED CASE

Plaintiff Pension Benefit Guaranty Corporation ("PBGC") files this motion to reassign Civil Action No. 08CV2699 ("Collection Action," *see* complaint filed in Collection Action, attached as Exhibit A), now assigned to the Honorable George M. Marovich, to the Honorable Robert M. Dow, Jr., who is assigned to Civil Action No. 08CV2529 ("Fiduciary Breach Action"). Under Local Rule 40.4, the two matters are related cases, in that they involve common issues of fact and law, and both actions arise, in part, from the same transactions or occurrences. Reassignment of the Collection Action to Judge Dow will allow for greater efficiency and saving of judicial time and effort.

### Background

PBGC, on its own behalf and on behalf of the Retirement Program of Liam Ventures, Inc., (the "Pension Plan") initiated the above actions by filing two separate complaints (the Fiduciary Breach Action on May 2, 2008, and the Collection Action on May 9, 2008) in the United States District Court for the Northern District of Illinois. None of the Defendants in either action have filed an answer or responsive pleading. An initial status conference in the

Fiduciary Breach Action is scheduled for July 29, 2008, and an initial status conference in the Collection Action is scheduled for August 19, 2008.

## Argument

**A.    Both Actions Involve Common Issues of Fact and Law, and Both Actions Arise from the Same Transactions or Occurrences.**

Under Local Rule 40.4, if two or more civil cases are related, then the later numbered case may be assigned to the judge presiding over the earlier numbered case.  Two cases are considered to be related, if:

     (1)    the cases involve the same property

     (2)    the cases involve some of the same issues of fact or law;

     (3)    the cases grow out of the same transaction or occurrence; or

     (4)    in class action suits, one or more of the classes involved in the cases is or are the same. [1]

Here, the Fiduciary Breach Action and the Collection Action both arise out of significant losses sustained by the Retirement Program of Liam Ventures, Inc. ("Pension Plan").[2] LV Ventures, Inc. ("LV"), a Delaware corporation owned by LIA, Inc. is the contributing sponsor of the Pension Plan.  Both LV and its sole shareholder, LIA, Inc., are defendants in the Collection Action.  LIA, Inc. is owned by William F. Farley ("Farley"), a defendant in both actions, and by a trust established by Farley.  Farley controlled the investment of the Pension Plan's assets and was therefore a fiduciary of the plan under 29 U.S.C. §1002(21).  The Administrative Committee of the Retirement Program of Liam Ventures, Inc. ("Administrative Committee"), and its individual members, administered the Pension Plan pursuant to 29 U.S.C.

---

[1] LR 40.4 (a).
[2] PBGC assumed the Pension Plan pursuant to 29 U.S.C. § 1342.

§1002(21) and was the named fiduciary of the plan.  The Administrative Committee and its individual members are defendants in the Fiduciary Breach Action.

In November 2004, PBGC perfected liens against the assets of LV and certain of its affiliates.  The liens arose under 26 U.S.C. §412(n) (2007) upon LV's failure to make required contributions to the Pension Plan in excess of $1,000,000.

In May 2005, by agreement with the plan administrator, PBGC became the statutory trustee under 29 U.S.C. § 1342.  As of the date of plan termination, the Pension Plan's liabilities exceeded its assets by an estimated $121.4 million.

After becoming statutory trustee, PBGC undertook a lengthy investigation of the Pension Plan.  Based on that investigation, PBGC learned of numerous improper transactions which adversely affected the Pension Plan.  As a result, PBGC filed the Fiduciary Breach Action against Farley, the Administrative Committee, and its members.  Shortly thereafter, PBGC also filed the Collection Action against LV and the other members of the Pension Plan's controlled group to retrieve statutory liabilities for underfunding and missed contributions under 29 U.S.C §1362, to foreclose on the Pension Plan's statutory liens and to pierce the corporate veil of LV and other defendant corporations to hold Farley liable for the debts of the defendant corporations.  Accordingly, both cases arise out of the facts and circumstances relating to the underfunding and termination of the Pension Plan.

**B.      All Conditions for Reassignment of the Collection Action have been met.**

When two cases are related, the later numbered case may be assigned to the judge assigned to the earlier numbered case if:

(1)      both cases are pending in this Court;

(2)      the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;

(3)     the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and

(4)     the cases are susceptible of disposition in a single proceeding.[3]

Here, each of the conditions for reassignment of the Collection Action has been met. First, PBGC filed the Fiduciary Breach Action on May 2, 2008 and the Collection Action on May 9, 2008. Therefore, both cases are pending in this Court.

Second, the handling of both cases by Judge Dow will result in a substantial saving of judicial time and effort. As noted above, both cases arise out of the facts and circumstances related to the underfunding and termination of the Pension Plan. Due to the complex nature of the facts at issue in the Fiduciary Breach Action and the Collection Action, with respect to the count to pierce the corporate veil, the parties will require significant discovery from multiple witnesses. At a minimum, Farley will be a witness in both matters. Other individuals, including the members of the Administrative Committee, may be witnesses in both cases. Moreover, in both cases, the parties will likely examine many of the same transactions that adversely affected the Pension Plan. By reassigning the Collection Matter, the parties will be able streamline discovery in both cases, and present the complex legal and factual issues before one judge. Accordingly, any duplication of efforts by the parties and the Court will be eliminated.

Third, the cases have not progressed to the point where reassigning the Collection Action to this Court will result in any delay. As noted above, PBGC mailed requests for waiver of service to the defendants in both cases on June 3, 2008. None of the Defendants have filed an answer or otherwise responded to the complaints.

---

[3] LR 40.4(b).

Finally, both cases are susceptible to disposition in a single proceeding. Each proceeding seeks relief that is consistent with the relief sought in the other proceeding.

WHEREFORE, PBGC requests that the Court enter an Order:

(1)    granting this Motion to Reassign Related Case;

(2)    reassigning the Collection Action to the Honorable Robert M. Dow, Jr.; and

(3)    granting such other and further relief as the Court deems necessary and proper.

Dated:  July 23, 2008                          Respectfully submitted,
        Washington, D.C.


                                               /s/John H. Ginsberg
                                               ISRAEL GOLDOWITZ
                                               Chief Counsel
                                               KAREN MORRIS
                                               Deputy Chief Counsel
                                               KARTAR KHALSA
                                               Assistant Chief Counsel
                                               JOEL W. RUDERMAN
                                               Assistant Chief Counsel
                                               FRANK ANDERSON
                                               Attorney
                                               JOHN H. GINSBERG
                                               Attorney
                                               PENSION BENEFIT GUARANTY
                                               CORPORATION
                                               Office of the Chief Counsel
                                               1200 K Street, N.W.
                                               Washington, D.C.  20005
                                               Tel. No. (202) 326-4020, ext. 3732
                                               Fax No. (202) 326-4112
                                               E-mail: ginsberg.john@pbgc.gov and
                                               efile@pbgc.gov

                                               Attorneys for Pension Benefit Guaranty
                                               Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Motion to Reassign Related Case was sent on

the 23rd day of July by overnight courier, upon the following parties:

Carol Connor Cohen, Esquire
Nancy S. Heermans, Esquire
Valerie Webb, Esquire
ARENT FOX LLC
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339

Bernard J. Nussbaum, Esquire
Richard L. Fenton, Esquire
SONNENSCHEIN NATH & ROSENTHAL
LLP
7800 Sears Tower
233 South Wacker Drive
Chicago, IL  60606-6404

Sara A. Weinberg, Esquire
JACKSON LEWIS LLP
320 West Ohio Street, Suite 500
Chicago, Illinois 60610


  /s/John H. Ginsberg_____
JOHN H. GINSBERG
Attorney

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

Pension Benefit Guaranty Corporation,
    on its own behalf and on behalf of
    the Retirement Program of Liam Ventures, Inc.,

                                   Plaintiff,

     v.

LV Ventures, Inc.,

Biotechvest II, Inc.,

Biotechvest LP,

Farley West Ventures, LLC,

LIA, Inc.,

New Liam, LLC,

OPT, Inc.,

Tool & Engineering of Detroit, Inc.,

Velocity Capital, LLC,

VPF CiDRA Investments, LLC,

WF Investors, LLC,

White Pine Development LLC,

Fifth Third Bank,

Highland Capital Corp.

TD Banknorth, N.A.,

Wells Fargo Equipment Finance, Inc., and

Mr. William F. Farley,

                                 Defendants.

FILED: MAY 9, 2008
08 CV 2699   JH
JUDGE MAROVICH
MAGISTRATE JUDGE COX

Civil Action No. _____

## **COMPLAINT**

1.      Plaintiff Pension Benefit Guaranty Corporation ("**PBGC**") brings this action under 29 U.S.C. § 1303(e)(1) to obtain judgment for certain liabilities respecting the Retirement Program of Liam Ventures, Inc. ("**Pension Plan**"), to enforce the Pension Plan's statutory liens for unpaid minimum funding contributions, and to obtain such further relief as the Court may deem just and proper.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 1303(e)(3) and 1307(c) and 28 U.S.C. §§ 1331 and 1345.

3.      Venue properly lies in this Court pursuant to 29 U.S.C. § 1303(e)(2).

**PARTIES**

4.      PBGC is an agency of, and a federal corporation wholly-owned by, the government of the United States of America, and was established to administer the defined-benefit pension termination insurance program instituted under Title IV of the Employee Retirement Income Security Act of 1974 (as amended, "**ERISA**"), 29 U.S.C. §§ 1101-1461.

5.      Defendant LV Ventures, Inc. ("**LV**") is a Delaware corporation formed in 1982. LV was the sponsor of the Pension Plan, which was a single-employer, defined-benefit pension plan covered by the pension termination insurance program under Title IV of ERISA.

6.      Each of the following defendants is a wholly-owned subsidiary of LV:  (i) New Liam, LLC, a Delaware limited liability company formed in 2002; (ii) Biotechvest LP, an Illinois limited partnership formed in 1996; (iii) Biotechvest II, Inc., an Illinois corporation formed in 1996; (iv) Velocity Capital, LLC, a Delaware limited liability company formed in 1998; (v) White Pine Development LLC, a Maine limited liability company formed in 2000; (vi) Tool & Engineering of Detroit, Inc., a Michigan corporation formed in 1986; and (vii) Farley West

- 2 -

Ventures, LLC, a Delaware limited liability company formed in 1997.

7.     Defendant LIA, Inc. is a Delaware corporation formed in 1997 and owns 100% of LV.  LIA, Inc. is in turn owned 55% by Defendant William F. Farley ("**Mr. Farley**") and 45% by the WFF Descendants Trust 1998, an irrevocable trust that Mr. Farley established for the sole benefit of his minor son, Liam Farley.  Mr. Farley owns 100% of the voting shares in LIA, Inc.

8.     Defendant WF Investors, LLC is a Delaware limited liability company formed in 2004 and is owned 100% by Mr. Farley.

9.     Defendant OPT, Inc. is a Delaware corporation formed in 1984 and is owned 100% by Mr. Farley.

10.    Defendant VPF CiDRA Investments, LLC is a Delaware limited liability company formed in 2000 and is owned 60% by LV, 20% by Mr. Farley and 20% by Mr. Farley's spouse.

11.    Each of the foregoing defendants (collectively, the "**LV Defendants**") has its principal place of business in Chicago, Illinois.

12.    Defendants Fifth Third Bank; Highland Capital Corp.; TD Banknorth, N.A.; and Wells Fargo Equipment Finance, Inc. (collectively, the "**Lienor Defendants**") each have one or more UCC financing statements recorded on property of an LV Defendant.  They are named as defendants only with respect to Counts IV, VI and VII, which counts may result in relief bearing on the rights of Lienor Defendants respecting property subject to any unsatisfied liens they may hold.

13.    Defendant Fifth Third Bank is a Michigan banking corporation located in Grand Rapids, MI.  It filed with the Delaware Secretary of State a financing statement dated July 3, 2002 regarding certain assets of Defendant LV.

- 3 -

14.     Defendant Highland Capital Corp. is a New Jersey corporation headquartered in Little Falls, New Jersey.  It filed with the Illinois Secretary of State a financing statement dated March 28, 2001 regarding certain assets of Defendant LV.

15.     Defendant TD Banknorth, N.A. (f/k/a "Banknorth, N.A.") is a federally chartered national banking association headquartered in Portland, Maine.  It filed with the Delaware Secretary of State a financing statement dated August 21, 2002 regarding certain assets of Defendant OPT, Inc.

16.     Defendant Wells Fargo Equipment Finance, Inc. is a Minnesota corporation located in Minneapolis, Minnesota.  It filed with the Delaware Secretary of State a financing statement dated January 18, 2006 regarding certain assets of Defendant LV.

17.     Defendant William F. Farley is the principal direct or indirect owner of each of the LV Defendants.  Mr. Farley is named as a defendant only with respect to Counts V, VI, XIII and IX.

<u>COUNT I</u>:
<u>STATUTORY LIABILITY FOR UNFUNDED BENEFITS PROMISED UNDER THE PENSION PLAN</u>

18.     LV was the contributing sponsor of the Pension Plan within the meaning of 29 U.S.C. § 1301(a)(13).  As the contributing sponsor, LV was obligated to periodically contribute funds to the Pension Plan according to certain formulae prescribed under section 412 of the Internal Revenue Code and sections 302 and 303 of ERISA ("**Minimum Funding Contributions**").[1]

19.     In the early 1990's, LV (then known as "Farley Inc.") was struggling to meet its

---

[1] Several sections of the Internal Revenue Code and ERISA cited in this complaint were materially amended by the Pension Protection Act of 2006, Pub. L. 109-280, signed into law on August 17, 2006.  Those amendments are generally effective only for plan years beginning after December 31, 2007 and inapplicable to the Pension Plan. Unless expressly stated otherwise, all references to the Internal Revenue Code and ERISA in this complaint are to law effective as of the date the Pension Plan was terminated, March 31, 2005.

current liabilities, including Minimum Funding Contributions owed the Pension Plan. Creditors filed an involuntary bankruptcy petition against LV. As part of LV's efforts to emerge from bankruptcy, and to avoid termination of the Pension Plan and ensuing liability for the full amount by which the then-present value of the Pension Plan's liabilities for promised benefits exceeded the value of the Pension Plan's assets ("**Unfunded Benefit Liabilities**"), LV entered into a certain Funding, Security and Collateral Trust Agreement with PBGC ("**1992 Agreement**"). Under the 1992 Agreement, LV was obligated to make contributions to the Pension Plan in excess of statutory Minimum Funding Contributions. That obligation was secured by a pledge of stock in Fruit of the Loom, Inc., of which Mr. Farley and LV were major shareholders and of which Mr. Farley was chairman and CEO.

20. LV failed to make a series of Minimum Funding Contributions, beginning with the contribution due January 15, 2004. By that date, the Fruit of the Loom stock pledged to secure LV's obligations under the 1992 Agreement had become worthless, in connection with liquidation of Fruit of the Loom's assets in a bankruptcy filed in 1999.

21. On March 28, 2005, PBGC issued notice of its determination that the Pension Plan should be terminated because it was underfunded and would be unable to pay promised benefits when due.

22. On May 3, 2005, the Administrative Committee of the Pension Plan entered into an agreement with PBGC pursuant to which the Pension Plan was terminated, effective March 31, 2005, and PBGC was appointed statutory trustee of the Pension Plan under 29 U.S.C. § 1362(b), effective May 3, 2005.

23. PBGC estimates that the Unfunded Benefit Liabilities of the Pension Plan were $121.4 million as of the date the Pension Plan was terminated. LV is liable to PBGC for $121.4

million for Unfunded Benefit Liabilities, plus interest accruing since the date the Pension Plan

was terminated.  See 29 U.S.C. § 1362(b) (liability for amount of unfunded benefit liabilities); 29

U.S.C. § 1301(a)(18) (defining "amount of unfunded benefit liabilities").  The interest on the

Unfunded Benefit Liabilities from the date of Pension Plan termination through November 6,

2007, equals $25,504,863, based on an 8% annual interest rate.

      24.      LV and the other LV Defendants are under common control and, together, form

LV's "controlled group" within the meaning of 29 U.S.C. § 1301(a)(14).  They are, therefore,

jointly and severally liable for Unfunded Benefit Liabilities and interest thereon.  See 29 U.S.C.

§ 1362(a) & (b).

      25.      On March 25, 2008, PBGC sent a letter to each of the LV Defendants demanding

payment of the Unfunded Benefit Liabilities, plus accrued interest, no later than April 8, 2008.

None of the LV Defendants has tendered payment.

      **WHEREFORE,** PBGC respectfully requests that this Court enter judgment against each

of the LV Defendants and in favor of PBGC for the Pension Plan's Unfunded Benefit Liabilities,

in the amount of $121.4 million, plus accrued interest of $25,504,863, plus such additional

interest as shall have accrued.

### COUNT II:
### STATUTORY LIABILITY FOR UNPAID MINIMUM FUNDING CONTRIBUTIONS

      26.      PBGC incorporates paragraphs 1 through 25 of this complaint as if fully set forth

herein.

      27.      Under section 4062(c) of ERISA (29 U.S.C. 1362(c)) each of the LV Defendants

is jointly and severally liable to PBGC, as the statutory trustee of the Pension Plan, for the

balance of Minimum Funding Contributions required to satisfy the minimum funding standards

under section 412 of the Internal Revenue Code and section 302 of ERISA (26 U.S.C.

§ 412(c)(11); 29 U.S.C. § 1082(c)(11)), which balance equals $43,420,773, plus interest on unpaid contributions accrued through November 6, 2007 in the amount of $9,122,248, based on an 8% annual interest rate.

28.     On March 25, 2008, PBGC sent a letter to each of the LV Defendants demanding payment no later than April 8, 2008 of $43,420,773 for unpaid Minimum Funding Contributions to the Pension Plan, plus accrued interest of $9,122,248.  None of the LV Defendants has tendered payment.

**WHEREFORE,** PBGC respectfully requests that this Court enter judgment against each of the LV Defendants and in favor of PBGC, as trustee of the Pension Plan, for due and unpaid Minimum Funding Contributions to the Pension Plan, in the amount of $43,420,773, plus accrued interest of $9,122,248, plus such additional interest as shall have accrued.

### COUNT III:
### STATUTORY LIABILITY FOR UNPAID INSURANCE PREMIUMS

29.     PBGC incorporates paragraphs 1 through 28 of this complaint as if fully set forth herein.

30.     LV, as contributing sponsor of the Pension Plan, was required to pay insurance premiums to PBGC.  See 29 U.S.C. § 1307(a) & (e).  LV failed to pay insurance premiums totaling $327,001.  Each of the LV Defendants, as members of LV's controlled group, is jointly and severally liable to PBGC for premiums due.  See 29 U.S.C. § 1307(e)(2).

31.     On March 25, 2008, PBGC sent a letter to each of the LV Defendants demanding payment no later than April 8, 2008 of unpaid insurance premiums, plus interest.  None of the LV Defendants has tendered payment.

**WHEREFORE,** PBGC respectfully requests that this Court enter judgment against each of the LV Defendants and in favor of PBGC for  $327,001, plus interest, for unpaid insurance

premiums.

**C<small>OUNT</small> IV:**
**J<small>UDGMENT</small> D<small>ECLARING</small> L<small>IENS</small> V<small>ALID AND</small> P<small>ERFECTED AS</small> F<small>ILED</small>**

32.     PBGC incorporates paragraphs 1 through 31 of this complaint as if fully set forth

herein.

33.     When the balance of unpaid Minimum Funding Contributions to the Pension Plan

exceeded $1,000,000, which occurred on January 15, 2004, statutory liens in favor of the

Pension Plan automatically arose for the sum of such contributions, plus interest, encumbering

all property and rights to property of each of the LV Defendants (collectively, the "**Liens**").  See

26 U.S.C. § 412(n); 29 U.S.C. § 1082(f).  PBGC has authority to enforce the Liens.  See 26

U.S.C. § 412(n)(5); 29 U.S.C. §§ 1082(f)(5), 1303(e)(1)(B).  After the Liens arose, LV continued

to fail to make minimum funding contributions, and the Liens grew, so that PBGC now has the

right to enforce a charge of $89,606,982 against all property and rights to property of each of the

LV Defendants.  The lien amount is comprised of $81,063,334 in aggregated unpaid Minimum

Funding Contributions to the Pension Plan, plus $7,557,347 in interest accruing at 8% annually

from the date each unpaid contribution became due through September 15, 2006.

34.     Liens for unpaid minimum funding contributions arising under 26 U.S.C.

§ 412(n) are perfected upon PBGC's filing of a notice of federal lien in the appropriate

jurisdiction(s).[2]   In November, 2004, PBGC perfected the Liens with respect to certain of the

LV Defendants by filing notices of federal lien in relevant jurisdictions in the amount of

$24,863,185, which was the sum of due and unpaid minimum funding contributions to that date,

plus accrued interest thereon.  In November, 2007, PBGC filed notices of federal lien to:

---

[2] See 26 U.S.C. § 412(n)(3)(C) (such liens are treated as federal tax liens); 29 U.S.C. § 302(f)(4)(C) (making 29
U.S.C. § 1368(c) applicable to such liens); 29 U.S.C. § 1368(c) (perfection to be effected pursuant to 26 U.S.C.§

- 8 -

(1) increase the amount of each Lien PBGC perfected in 2004 to $89,606,982; and (2) perfect liens in the same amount against certain LV Defendants that PBGC had not yet determined to be members of LV's controlled group when perfecting liens in 2004. Appended to this complaint is a table showing the dates on which PBGC perfected the Liens with respect to each of the LV Defendants, by filing notices of federal lien, and the jurisdictions and amounts in which PBGC filed such notices.

**WHEREFORE,** PBGC respectfully requests that this Court issue judgment declaring the Liens valid and perfected as filed.

**COUNT V:**
**JUDGMENT DECLARING LIEN-ENCUMBERED ASSETS AVAILABLE FOR LIEN SATISFACTION DESPITE PRE-PERFECTION TRANSFER TO AN INSIDER AWARE OF THE ENCUMBRANCE**

35.     PBGC incorporates paragraphs 1 through 34 of this complaint as if fully set forth herein.

36.     On information and belief, the total value of all property and rights to property held by the LV Defendants and available for satisfaction of the Liens is less than the Lien amount.

37.     On information and belief, in an unknown number of instances, an LV Defendant transferred a Lien-encumbered asset (which assets include cash and fungible securities), prior to perfection of the encumbering Lien, to Mr. Farley or another of its direct or indirect owners who knew of the encumbrance and of the unavailability of assets sufficient to satisfy the Lien (each such transferee, an "Insider"). PBGC expects to discover, in the course of this action, all such transfers, and the respective Insider's knowledge, at the time of each transfer, of the encumbrance and of the transferring LV Defendant's insolvency, and any subsequent transfer of

---

6323(f); 26 U.S.C. § 6323(a) & (f) (federal tax liens perfected by filing notices).

encumbered assets.  Each transferred asset still in possession of an Insider-transferee, and the

proceeds thereof, remains subject to Lien foreclosure notwithstanding the absence, at the time of

transfer, of public notice provided by perfection.

WHEREFORE, PBGC respectfully requests that this Court issue judgment: (1) holding

that each Lien-encumbered asset remains encumbered and available for lien satisfaction upon

pre-perfection transfer to an Insider aware of the encumbrance; and (2) declaring such assets,

and the proceeds thereof, identified in the course of this action, to be subject to foreclosure.

COUNT  VI:
JUDGMENT DECLARING PRIORITY OF RIGHTS IN ASSETS ENCUMBERED BY THE LIENS

38.	PBGC incorporates paragraphs 1 through 37 of this complaint as if fully set forth

herein.

39.	The Liens encumber all property and rights to property that the LV Defendants

held at the time the Liens arose, and all that they acquired thereafter.   On information and belief,

at least some of the LV Defendants have property or rights to property encumbered by, and

available for satisfaction of, the Liens, including cash and cash equivalents, illiquid equity

securities, and, in the case of LV, a profitable manufacturing operation and the real property on

which the manufacturing operation is conducted, which is located in Dodge County, Nebraska

and owned in fee simple (the "**Nebraska Property**").  PBGC expects to discover, in the course

of this action, the full set of the LV Defendants' assets encumbered by and available for

satisfaction of the Liens, and the locations of such assets.  On information and belief, the total

value of all property and rights to property held by the LV Defendants and available for

satisfaction of the Liens is less than the Lien amount.

40.	PBGC has conducted a diligent search for recorded, unreleased liens on property

of the LV Defendants, seeking such liens on both specific, known property and, more generally,

- 10 -

under the present and former names of the LV Defendants in the respective jurisdictions where

they are known to have conducted business. PBGC has found a limited set of such liens.  Based

upon the results of that search, PBGC has named the Lienor Defendants as defendants with

respect to Counts IV, VI and VII.  PBGC expects to discover, in the course of this action, the full

set of unsatisfied liens and other property interests in assets of the LV Defendants and all facts

material to the priority of such liens and other property interests, and to join as parties in this

action — pursuant to Federal Rule of Civil Procedure 19 and 28 U.S.C. § 1655, — all persons

necessary to the just resolution of the causes of action before the Court.  PBGC will not in this

action seek to enforce, or to establish the relative priority of, its rights as lienholder with respect

to the Nebraska Property or any other real property of any LV Defendant located outside of

Illinois with respect to which venue properly lies in the state where such real property is situated.

41.     The Liens continue to encumber all property and rights to property of each LV

Defendant notwithstanding any post-perfection transfer thereof by an LV Defendant to another

person, subject to certain limits (including those set forth in 26 U.S.C. § 6323).  The Liens

continue to encumber cash and fungible securities transferred to, and held by, a person having

actual knowledge of the existence of an encumbering Lien.[3]

**WHEREFORE,** PBGC respectfully requests that this Court issue judgment:

(1) declaring certain property and rights to property to be encumbered by, and available for

satisfaction of, the Liens, including certain property transferred after perfection of an

encumbering Lien; and (2) declaring the existence and priority of rights in such property,

including PBGC's rights as lienholder relative to the rights of transferees.

---

[3] See 6 U.S.C. § 412(n)(3)(C) (liens under 26 U.S.C. § 412 are treated as federal tax liens); 26 U.S.C. § 6321
(federal tax liens encumber all property and rights to property of the lien debtor); 26 U.S.C. § 6323(b)(1) (federal tax
lien attaches to "securities" and is valid against one who acquires a "security" with actual knowledge); 26 U.S.C. §
6323(h)(4) ("securities" include cash); 26 U.S.C. § 6323(i)(1) (defining actual knowledge).

## COUNT VII:
### WRITS OF EXECUTION AND DECREES OF FORECLOSURE

42.     PBGC incorporates paragraphs 1 through 41 of this complaint as if fully set forth herein.

**WHEREFORE,** PBGC respectfully requests that this Court:

    a.    issue writs of execution with respect to the judgments rendered by the Court in this action and the payment obligations secured by the Liens;

    b.    issue decrees of foreclosure directing the United States Marshal to:

        i.    levy on and transfer to PBGC all cash and cash equivalents encumbered by a Lien and in excess of superior liens thereon;

        ii.    levy on and transfer to PBGC such other personal property of the LV Defendants as PBGC may nominate as acceptable in partial satisfaction of LV Defendants' obligations, to the extent such strict foreclosure is consistent with applicable law (including, to the extent applicable, 810 ILCS 5/9−620 through 622);

        iii.    levy on and sell all other property and rights to property encumbered by, and available for satisfaction of, any of the Liens or any lien arising from a judgment rendered by the Court in this action, except: (i) property that PBGC may ask the Court to exclude from foreclosure, such as the interests of certain LV Defendants in other LV Defendants; and (ii) any real property located outside of Illinois and with respect to which the proper venue for foreclosure lies in the state and district where the real property is located, or, if the real property is located in more than

- 12 -

one district in a single state, then in any such district, pursuant to
28 U.S.C. § 1392; and

iv.    distribute the proceeds of sale in accordance with the priority of
interests therein; and

c.    issue such writs of execution and decrees of foreclosure irrespective of the
location of the property subject thereto, pursuant to 28 U.S.C. § 2413, and
irrespective of possessory interests inferior to PBGC's rights as Lien-
holder; and

d.    order that all sales pursuant to the Court's decrees of foreclosure shall be
free and clear of all liens, security interests and other property rights that
the Court has declared to exist in the property sold.

### COUNT XIII:
### JUDGMENT DECLARING CERTAIN TRANSFERS TO HAVE BEEN FRAUDULENT AND ORDERING RESCISSION OR DAMAGES

43.    PBGC incorporates paragraphs 1 through 42 of this complaint as if fully set forth
herein.

44.    On information and belief, in an unknown number of instances, an LV Defendant
engaged in the fraudulent transfer to Mr. Farley or another insider or other person, each such
transfer having been made:

a.    with the actual intent to hinder or delay the Pension Plan or the PBGC in
collecting on the LV Defendant's liability; or

b.    to Mr. Farley or another insider for an antecedent debt, while the LV
Defendant was insolvent, and the transferee had reasonable cause to
believe the LV Defendant was insolvent; or

   c.  without the LV Defendant receiving a reasonably equivalent value in

     exchange, and the LV Defendant was insolvent at the time of, or became

     insolvent as a result of, the transfer.

  45.  PBGC expects to obtain, via discovery in this action, a complete accounting of

such transfers.

  46.  To the extent PBGC believes it will otherwise be unable to obtain full satisfaction

of the Liens and all liabilities of the LV Defendants to the Pension Plan and the PBGC, PBGC

intends to pursue all available remedies against the recipients and beneficiaries of fraudulent

transfers, joining transferees as defendants in this action with respect to Counts IV and VIII.

  **WHEREFORE,** PBGC respectfully requests that this Court issue judgment:

(1) declaring certain transfers of assets to have been fraudulent transfers under 28 U.S.C. § 3304,

or Illinois' Fraudulent Transfer Act (740 ILCS 160 et seq.), or other applicable fraudulent

conveyance law; and (2) ordering rescission of each fraudulent transfer and the return of the

transferred property, plus interest, to the LV Defendant transferor or, to the extent any

transferred property, or the reasonable proceeds thereof, proves unavailable for return, judgment

against each fraudulent transferee, awarding damages for the amount by which the value of the

fraudulently-transferred asset exceeded the value of the consideration therefor.

**COUNT IX:**
**PIERCING THE CORPORATE VEIL OF DEFENDANTS LV AND LIA, INC. AND HOLDING MR.**
**FARLEY PERSONALLY LIABLE FOR THEIR DEBTS ON JUDGMENTS RENDERED IN THIS ACTION**

  47.  PBGC incorporates paragraphs 1 through 46 of this complaint as if fully set forth

herein.

  48.  On March 24, 1999, Mr. Farley borrowed approximately $65 million from

Nations Bank (now Bank of America) and Credit Suisse First Boston (together, the "**Farley**

**Lenders**").

49. Fruit of the Loom, Inc. ("**FOL**") guaranteed the loan, with the approval of its board and at the behest of Mr. Farley, FOL's chairman and CEO.

50. Mr. Farley agreed to reimburse FOL for any payments required of FOL under the guaranty.

51. Mr. Farley caused LV and several of its controlled group members — specifically, LIA, Inc.; Biotechvest II, Inc.; Biotechvest LP; and OPT, Inc. (hereinafter, with LV, the "**Upstream Guarantors**") — to secure Mr. Farley's reimbursement obligations to FOL by pledging or, in the case of OPT, mortgaging their respective assets.

52. The Upstream Guarantors received nothing, or significantly less than reasonably equivalent value, in return for exposing all of their assets to the risk that Mr. Farley would default on the $65 million loan.

53. On or about December 29, 1999, FOL filed for Chapter 11 bankruptcy protection.

54. Mr. Farley defaulted on the $65 million loan from the Farley Lenders. On or about October 27, 2000, the Farley Lenders filed a collection action against Mr. Farley for approximately $60 million in state court in New York. The action was removed to the United States District Court for the Southern District of New York, which awarded summary judgment to the Farley Lenders.

55. The Farley Lenders filed claims for over $60 million in FOL's bankruptcy, seeking to enforce their rights under FOL's guaranty of the loan.

56. Under FOL's plan of reorganization, the Farley Lenders' assigned their claims and judgment against Mr. Farley to the FOL Liquidation Trust.

57. On or about July 12, 2002, the FOL Liquidation Trust entered into a Settlement

Agreement with Mr. Farley and the Upstream Guarantors settling: (1) the claims and judgment against Mr. Farley assigned to the FOL Liquidation Trust by the Farley Lenders; and (2) FOL's claims under the Reimbursement Agreement and associated security agreements. Under the Settlement Agreement, Mr. Farley promised to pay $10 million upon consummation of the settlement, to pay another $2 million no later than fifteen months following consummation, and to repay $2.2 million, plus fees, on an outstanding letter of credit. To secure Mr. Farley's obligations under the Settlement Agreement: (i) LV pledged shares of stock that it owned in Dynavax Technologies Corp. and Cidra Corp.; (ii) Biotechvest, LP, a member of LV's controlled group, pledged shares of stock that it owned in Exelixis Inc. and Variagenic, Inc.; and (iii) OPT, Inc., another member of LV's controlled group, granted a second mortgage on its real property.

58.    Mr. Farley caused LV to directly transfer $5 million to the FOL Liquidation Trust to partially satisfy his own promise to pay $10 million upon consummation of the Settlement Agreement. In exchange for this payment, LV received nothing or significantly less than reasonably equivalent value.

59.    Mr. Farley defaulted on his obligations under the Settlement Agreement. The FOL Liquidation Trust exercised its rights with respect to the collateral pledged by LV and Biotechvest, LP and the second mortgage lien on real estate of OPT, Inc.

60.    In addition to the foregoing, Mr. Farley used his complete control of LV to cause LV to make a series of loans to himself, without the concern for creditworthiness that Mr. Farley would have faced from an unaffiliated lender in an arm's-length transaction, and on terms more favorable than Mr. Farley could have obtained from an unaffiliated lender in an arm's-length transaction. LV did not receive reasonably equivalent value in return for making these loans. Mr. Farley's promises to repay were deficient consideration because the terms of the loans were

significantly more favorable than market norms and failed to reflect the risk that Mr. Farley would default.

61.     On September 30, 2003, Mr. Farley, in his capacity as sole director of LV, caused LV to permanently forgive and release all claims with respect to the full outstanding balance of loans LV had made to Mr. Farley — a total of $19,329,957 — citing his own "financial inability to make any substantial payment against such liability now or in the future."  LV had no basis for concluding that Mr. Farley was permanently incapable of repaying any substantial part of the loans.  By forgiving the loans, LV gave away valuable claims and did not receive reasonably equivalent value in return.

62.     LV was insolvent at the time of, or rendered insolvent by: (1) pledging its assets to secure a loan to Mr. Farley on which there was a significant likelihood of his default; (2) transferring $5 million to the FOL Liquidation Trust to partially satisfy Mr. Farley's own promise to pay $10 million upon consummation of the Settlement Agreement; (3) making the loans to Mr. Farley; and (4) forgiving those loans (such actions, collectively, the "**LV Transfers**").  As a result, LV was rendered unable to fulfill its obligations to contribute to the Pension Plan.

63.     LIA, Inc.; Biotechvest II, Inc.; Biotechvest LP; and OPT, Inc. were each insolvent at the time of, or rendered insolvent by, pledging or (in the case of OPT) mortgaging their respective assets to secure the loan to Mr. Farley.  As a result, each was rendered unable to meet its joint and several liabilities for contributions to the Pension Plan.

64.     In addition to the foregoing transactions, and during the time period in which the foregoing transactions occurred, Mr. Farley caused LV and members of its controlled group to make additional payments to or for the benefit of himself, and distributions up the corporate

ownership chain to himself, while LV was insolvent or at high risk of insolvency. In exchange

for these transfers, the transferors received nothing or significantly less than reasonably

equivalent value. As a result, each of the transferors was rendered unable to meet its joint and

several liabilities for contributions to the Pension Plan.

65.     Mr. Farley, in causing LV and its controlled group members to grant security

interests in their assets to secure his own obligations, and to transfer their assets to or for the

benefit of himself, intended to enrich himself by diverting for his own use assets that would

otherwise have been available for satisfaction of the transferors' obligations to their creditors,

including contributions to the Pension Plan.

66.     The Pension Plan was the largest, or one of the largest, creditors of LV and each

member of LV's controlled group throughout the period during which the aforementioned

transactions occurred. At all relevant times, the Pension Plan had unfunded liabilities for

millions of dollars in benefits that had been promised to Plan participants under the terms of the

Pension Plan. LV and the members of its controlled group were liable, under ERISA and the

PBGC Agreement, for contributions to the Pension Plan, which were due over time and designed

to make up shortfalls in plan assets over time.

67.     Mr. Farley had complete control of LIA, Inc. and LV. He was the sole director

and chief executive officer of each. He owned all voting shares and 55% of all outstanding

shares in LIA, Inc. (having sold nonvoting shares representing 45% ownership in LIA, Inc. to a

trust for the benefit of his minor son). LIA Inc., in turn, owned 100% of the stock in LV.

68.     Mr. Farley used his control of LIA, Inc., and his control of LV through LIA, Inc.,

to cause each to act against its interests in the service of his own.

69.     Mr. Farley caused LIA, Inc. and LV to transfer their assets to or for the benefit of

himself, even when such transfers predictably left LIA, Inc. and LV insolvent, unable to meet their payment obligations, and exposed to liabilities they could not satisfy.

70.    Mr. Farley thus caused LIA, Inc. and LV to behave not as separate entities having obligations to meet and exercising independent business judgment, but as alter egos of himself,

71.    When Mr. Farley caused these transfers, he knew LV and LIA, Inc. would be left unable to meet their obligations to their creditors, including the Pension Plan, but he proceeded because he wanted the assets for his own use, and he expected and intended that the separate corporate identities of LV and LIA, Inc. would shield him from liability to the Pension Plan.  Mr. Farley thus used the corporate structures of LV and LIA, Inc. to perpetrate fraud and injustice against the Pension Plan and to circumvent the pension funding regime under ERISA.

**WHEREFORE,** PBGC respectfully requests that this Court issue judgment: (1) declaring that the corporate veils of LIA, Inc. and LV be pierced with respect to the judgments for money damages rendered against them by the Court in this action; and (2) against Mr. Farley for the sum of such money damages.

### COUNT X:
### JUDGMENT FOR FEES AND COSTS INCURRED BY PBGC IN CONNECTION WITH THIS ACTION

72.    PBGC incorporates paragraphs 1 through 71 of this complaint as if fully set forth herein.

73.    PBGC has incurred costs in preparing this action and expects to incur further costs in prosecuting this action.

74.    This Court has the power to relieve PBGC of the expense of this litigation under 29 U.S.C. § 1303(e)(5), which provides that the Court may award PBGC judgment for costs of litigation incurred in any action brought under Title IV of ERISA.  PBGC has brought this action

under Title IV against each of the LV Defendants.

**WHEREFORE,** PBGC respectfully requests that this Court enter judgment against each of the LV Defendants for all expenses PBGC shall have incurred in connection with this action.

### PRAYER FOR ADDITIONAL RELIEF

75.     PBGC incorporates paragraphs 1 through 74 of this complaint as if fully set forth herein.

**WHEREFORE,** PBGC respectfully requests that the Court grant such additional relief as the Court deems just and proper.

Respectfully submitted,

Dated: May 9, 2008                      __/s/ John Holland Ginsberg
                                        ISRAEL GOLDOWITZ
                                        Chief Counsel
                                        KAREN L. MORRIS
                                        Deputy Chief Counsel
                                        KARTAR KHALSA
                                        Assistant Chief Counsel
                                        JOHN GINSBERG
                                        Attorney

                                        PENSION BENEFIT GUARANTY CORPORATION
                                        1200 K Street, N.W.
                                        Washington, D.C. 20005
                                        Phone: (202) 326-4020, ext. 3714
                                        Fax.:   (202) 326-4112
                                        E-mail: ginsberg.john@pbgc.gov & efile@pbgc.gov

Member of the General Bar &
Designated Local Counsel for Service:   THOMAS P. WALSH
                                        Assistant United States Attorney
                                        U.S. ATTORNEY'S OFFICE, N.D. ILLINOIS
                                        219 Dearborn St., 5th Floor
                                        Chicago, IL 60604-1702
                                        Phone:  (312) 353-5300/-
                                        Fax:  (312) 353-2067

                                        Attorneys for Pension Benefit Guaranty Corporation

# APPENDIX

## LIENS PERFECTED BY PBGC AGAINST LV DEFENDANTS

# Liens Perfected by PBGC Against LV Defendants

| Name of Lienee | Entity Characteristics | PBGC Notices of Federal Lien Recorded |
|---|---|---|
| LV Ventures, Inc. (formerly "Farley Metals, Inc.," then "Farley Inc.," then "Liam Ventures, Inc.")<br><br>(successor by merger to Magnus, LLC, a Nebraska limited liability company formed in 2002; predecessor to LV by 2004 merger into LV) | Delaware corp. formed in 1982, having its principle place of business in Chicago, Illinois | Notice of $24,863,185 lien recorded by Illinois Secretary of State on Nov. 17, 2004; by Cook County Recorder of Deeds on Nov. 22, 2004; and by Nebraska Secretary of State and Dodge County (Nebraska) Register of Deeds on November 17, 2004.[4]<br><br>Notice increasing perfected amount of 2004 liens to 28,817,554 (reflecting interest accrued) and noticing newly-perfected lien of 60,789,428, recorded by Illinois Secretary of State on November 13, 2007; by Cook County Recorder of Deeds on Nov. 14, 2007; and by Nebraska Secretary of State and Dodge County (Nebraska) Register of Deeds on November 16, 2007. |
| LIA, Inc. (formerly "WFF, Inc.") | Delaware corp. formed in 1997, having its principle place of business in Chicago, Illinois | Notice of $24,863,185 lien recorded by Illinois Secretary of State on Nov. 22, 2004 and by Cook County Recorder of Deeds on Nov. 24, 2004.<br><br>Notice increasing perfected amount of 2004 lien to 28,817,554 (reflecting interest accrued) and noticing newly-perfected lien of 60,789,428, recorded by Illinois Secretary of State on November 13, 2007 and by Cook County Recorder of Deeds on Nov. 14, 2007. |
| New Liam, LLC | Delaware limited liability company formed in 2002, having its principle place of business in Chicago, Illinois | Notice of $24,863,185 lien recorded by Illinois Secretary of State on Nov. 22, 2004 and by Cook County Recorder of Deeds on Nov. 24, 2004.<br><br>Notice increasing perfected amount of 2004 lien to 28,817,554 (reflecting interest accrued) and noticing newly-perfected lien of 60,789,428, recorded by Illinois Secretary of State on November 13, 2007 and by Cook County Recorder of Deeds on Nov. 14, 2007. |
| Biotechvest LP | Delaware limited partnership formed in 1996, having its principle place of business in Chicago, Illinois | Notice of $24,863,185 lien recorded by Illinois Secretary of State on Nov. 22, 2004 and by Cook County Recorder of Deeds on Nov. 24, 2004.<br><br>Notice increasing perfected amount of 2004 lien to 28,817,554 (reflecting interest accrued) and noticing newly-perfected lien of 60,789,428, recorded by Illinois Secretary of State on November 13, 2007 and by Cook County Recorder of Deeds on Nov. 14, 2007. |

[4] Note: LV owns real property in Dodge County, Nebraska as successor-by-merger to Magnus, LLC. Both the 2004 and 2007 Notices of Federal Lien were concurrently recorded on the assets of Magnus, LLC and LV Ventures, Inc. Magnus, LLC merged into LV Ventures, Inc. a few days after the 2004 liens were recorded.

| Name of Lienee | Entity Characteristics | PBGC Notices of Federal Lien Recorded |
|---|---|---|
| Biotechvest II, Inc. | Illinois corporation formed in 1996, having its principle place of business in Chicago, Illinois | Notice of $24,863,185 lien recorded by Illinois Secretary of State on Nov. 22, 2004 and by Cook County Recorder of Deeds on Nov. 24, 2004.<br><br>Notice increasing perfected amount of 2004 lien to 28,817,554 (reflecting interest accrued) and noticing newly-perfected lien of 60,789,428, recorded by Illinois Secretary of State on November 13, 2007 and by Cook County Recorder of Deeds on Nov. 14, 2007. |
| Velocity Capital, LLC | Delaware limited liability company formed in 1998, having its principle place of business in Chicago, Illinois | Notice of $24,863,185 lien recorded by Illinois Secretary of State on Jan. 4, 2005 and by Cook County Recorder of Deeds on Feb. 2, 2005.<br><br>Notice increasing perfected amount of 2004 lien to 28,817,554 (reflecting interest accrued) and noticing newly-perfected lien of 60,789,428, recorded by Illinois Secretary of State on November 13, 2007 and by Cook County Recorder of Deeds on Nov. 14, 2007. |
| White Pine Development LLC (f/k/a "White Pine Development Company LLC") | Maine limited liability company formed in 2000, having its principle place of business in Chicago, Illinois | Notice of $24,863,185 lien recorded by Illinois Secretary of State on Jan. 4, 2005 and by Cook County Recorder of Deeds on Feb. 2, 2005.<br><br>Notice increasing perfected amount of 2004 lien to 28,817,554 (reflecting interest accrued) and noticing newly-perfected lien of 60,789,428, recorded by Illinois Secretary of State on November 13, 2007 and by Cook County Recorder of Deeds on Nov. 14, 2007. |
| Tool & Engineering of Detroit, Inc. | Michigan C corporation formed in 1986, having its principle place of business in Chicago, Illinois | Notice of $89,606,982 lien recorded by Illinois Secretary of State on November 13, 2007 and by Cook County Recorder of Deeds on Nov. 14, 2007. |
| VPF CiDRA Investments, LLC | Delaware limited liability company formed in 2000, having its principle place of business in Chicago, Illinois | Notice of $89,606,982 lien recorded by Illinois Secretary of State on November 13, 2007 and by Cook County Recorder of Deeds on Nov. 14, 2007. |
| Farley West Ventures, LLC | Delaware limited liability company formed in 1997, having its principle place of business in Chicago, Illinois | Notice of $89,606,982 lien recorded by Illinois Secretary of State on November 13, 2007 and by Cook County Recorder of Deeds on Nov. 14, 2007. |
| WF Investors, LLC | Delaware limited liability company formed in 2004, having its principle place of business in Chicago, Illinois | Notice of $89,606,982 lien recorded by Illinois Secretary of State on November 13, 2007 and by Cook County Recorder of Deeds on Nov. 14, 2007. |

| Name of Lienee | Entity Characteristics | PBGC Notices of Federal Lien Recorded |
|---|---|---|
| OPT, Inc. | Delaware C corporation formed in 1984, having its principle place of business in Chicago, Illinois | Notice of $89,606,982 lien recorded by Illinois Secretary of State on November 13, 2007 and by Cook County Recorder of Deeds on Nov. 14, 2007. |